Good morning, ladies and gentlemen. Our first case for argument this morning is in the matter of a guire. Mr. Roberts. May it please the Court. I'm Peter Roberts, and I represent Wheeler Financial, the appellant and cross-appellee. This is a bankruptcy appeal of final orders that were entered after a remand from the District Court. The Bankruptcy Court had originally entered orders that granted my client Wheeler relief from the automatic stay in the bankruptcy case and had denied the debtor's request to modify its confirmed Chapter 11 plan. On appeal, Judge Norgal vacated those orders and remanded the matter back for further proceedings consistent with his opinion. On the basis of Judge Norgal's opinion, the Bankruptcy Court entered a second set of orders, this time denying the motion for relief from stay and granting the debtor's request to modify its Chapter 11 plan. And on the basis of Judge Norgal's law of the case, Judge Packold affirmed those orders. In this appeal, Wheeler asks that the District Court orders be reversed and that the Bankruptcy Court's original orders be affirmed and reinstated. Mr. Roberts, I'm worried about the fourth word in your statement, maybe the fourth and fifth, the words final order. Is it clear that this is a final order? What remains to be done in the Bankruptcy Court? Nothing, Your Honor. This is a final order. Nothing? Your brief contends that your client is not even a party to this case. And if your client is not a party to this case, then a whole lot remains to be done in the Bankruptcy Court. My client wasn't a party from the time of the inception of the case through confirmation. After confirmation and after the plan default, we did file an appearance, and we did bring our motion for relief from the automatic stay. So you concede that your client made itself a party? Only after confirmation, Your Honor. But you concede that it is a party now? At this point in time, yes. But it was not a party at the time of confirmation, and it wasn't – Well, I don't see what difference that makes. An entity can choose to make itself a party. Your brief contends that the – among other things – that the claims of non-parties passed through bankruptcy unaffected, and that principle is surely true. But if you concede that your client is a party now, that whole line of argument doesn't work, right? It also affects appellate jurisdiction. So if you concede that your client is a party today, then perhaps we have appellate jurisdiction, but your – one of the themes in your brief vanishes. They can't both be true. We can't both have appellate jurisdiction and your client not be a party. Well, Your Honor, through the course of the bankruptcy case up until plan confirmation, when the order was entered confirming the debtor's plan, my client Wheeler was not involved at all. As a matter of fact, they had – But if it's a party now, it is bound by the judgment. If it's not a party, then the case is not done in the bankruptcy court, and there's no appellate jurisdiction. As I say, you can't have things both ways. And, Your Honor, Wheeler's not trying to have it both ways. I think what Wheeler's trying to do is to point to the case at – it existed in the timeline of a Chapter 11 case from inception. Appellate jurisdiction depends on how things are now. And whether your client's lien passes through bankruptcy unaffected depends on whether it ever became a party, not on when it became a party. That's why I'm having trouble reconciling these arguments. I understand, Your Honor, and I would just point to the course of the Chapter 11 as it existed, and as Chapter 11 is designed to provide for a filing and a plan confirmation, and that plan confirmation is a final order. Up until that – during that timeline, Wheeler was not involved at all. Wheeler hadn't even received any notice. Wheeler hadn't participated whatsoever in the bankruptcy case. Its sole involvement up until plan confirmation consisted of a single phone call to debtors' counsel on the eve of the planned balloting deadline. No, we know this, but it did become a party after plan confirmation. So it had ample opportunity to raise before the bankruptcy court whatever it wanted to. Yes, Judge Wood, and we did through our motion for relief from the automatic stay. That's the first point in time that Wheeler entered into the bankruptcy case was in order to get permission to go to the state court and to use the state court as a means of exercising its rights as a tax purchaser under Illinois law. All right, I have a different question for you. Are you contending that the amount – that the payment specified in the plan is less than the indubitable equivalent of the lien's value? At this point in time, it is, yes. I keep getting lost by at this point in time. Did you contend in the bankruptcy court or the district court that your client was being forced to accept less than the value of its lien? I do not believe, Your Honor, that we made that particular statement, no. Because cram down powers under the code depend on full payment, and if you have never argued that this is less than full payment, that removes another potential issue on remand. I guess, Your Honor, and I'm sorry if I equivocated in response to your first question, but again, there was a timeline of the Chapter 11, and there's also the timeline of an Illinois tax sale, and at the point in time when the redemption deadline ceased under Illinois law, that's the point in time when our rights as a tax purchaser did change, and I think that's the point I was trying to get across. As we sit here today, Wheeler does have rights as a tax purchaser and has the right to be able to go and get a tax deed, and those rights arose. But that all depends on what happened in the bankruptcy court, because what Judge Norgal found and what Judge Packold continued to find was that the lien in the confirmed plan was replaced by the, I should say the lien was replaced by the confirmed plan. So all of those other things that were happening in the Illinois courts with respect to the tax deed assumed that you had that lien, but you didn't, and Chase tendered the payment of the full lien, which you refused to accept because you wanted the tax deed. Exactly, Your Honor, and what we contend is that the plan and plan confirmation did not extinguish our rights. Right, and you lost on that point in the district court. I mean, it is interesting that the plan, that Class II of the plan is all about you. I mean, it's a little hard to see this as something that you really weren't participating in since it's really Wheeler that's this Class II group. I agree, Your Honor. It was Wheeler and Class II comprised Wheeler slash the Cook County Treasurer as well as DuPage. Right, right, right, but you were there by name. Yes, Your Honor, we were. We were mentioned by name in the plan as Class II and we control essentially Class II. So if there was a plan confirmation hearing today, we would control Plan II, we would control the voting and essentially have veto power over the plan. And you knew about 45 days before the confirmation of the plan that this was all afoot. That's when you negotiated your extra time and so forth. Well, 45 days before, Your Honor, was when the plan ballots were sent out and that was the first time since the beginning of the case. That's fine, but it was 45 days before, right? Correct, and it was only, I think the only conversation occurred right before the ballot deadline, which was a little bit later. So it was a couple weeks before plan confirmation. That's it. The case had been going on for seven or eight months at that point. The plan had been out there for a couple of months. The bar date had come and gone and Wheeler didn't get notice of any of that, which is astounding because as Your Honor points out, Wheeler was essentially Class II and hadn't been provided any of the notice or any of the opportunity to be able to assert its rights in the bankruptcy. Leading to the question, why didn't you just send the bankruptcy court a letter saying, this is all very interesting, but we are not parties and we do not plan to participate? Well, at that point in time, Wheeler had an engaged bankruptcy counsel and hadn't been involved in the case, Judge. I think why there is such a divergence in opinion between the bankruptcy court, Judge Barnes's view of the case and Judge Norgal's view of the case is that the bankruptcy court saw things on the ground and was closer to the situation and saw how all of these basic tenets of bankruptcy, which is disclosure and notice, weren't complied with. Well, we don't have a representative of the bankruptcy court here, but I find the bankruptcy judge's behavior astounding. It knew that Wheeler had a legal interest and did not ensure that Wheeler had ever been served with process and made a party. The Aguirres were, of course, committing bankruptcy fraud by omitting any mention of the debt for property taxes into Wheeler. And the behavior of the bank is utterly inexplicable, but I will be asking Mr. Rabin about that in his turn. Judge Easterbrook, in fairness to the bankruptcy court, I don't think these issues came out until Wheeler filed its motion for relief from the automatic stay post-confirmation. I don't know how that's possible, though, when the bankruptcy court confirms a plan naming Wheeler and yet there's no – I mean, like you flip back to the docket and you discover there's no appearance filed. Wheeler is not a party. At the time of confirmation. That's normally one thing judges do, to make sure that the people they are entering orders against are parties. And I think, Judge Easterbrook, looking at the transcript from the confirmation hearing, Judge Barnes had been told of the phone call that debtors counsel had received from Wheeler and goes on the basis as all bankruptcy judges do. I think federal judges know that there's a difference between service of process and phone calls. Knowing that there was a phone call and knowing that somebody was a party are totally different things. Anyway, I will be raising this with Mr. Rabin because I don't understand how the bank can put Wheeler's rights in the plan and not ensure that Wheeler was a party. I don't disagree, Judge Easterbrook, and it goes back to our fundamental argument as to why our liens did pass through. Yeah, but it didn't. You're a party now. You agree that you're a party now. But a party after the fact, Judge Easterbrook. Look, if you're never a party, then you're never a party and your lien is unaffected. But you've agreed that your client is a party. It may not have become a party in the regular way. It's either a party or it isn't, and if it isn't a party, there's no appellate jurisdiction. I don't get how you can claim things both ways, but we've been over this. And I won't beat a dead horse. I'll just say that we only became a party in order to get relief from the court to assert our rights. There would be no other way to do it. Sure there is. The way to assert your rights is just to say we were never a party to this bankruptcy, and it therefore doesn't affect us, period. That's how liens pass through bankruptcy. And by stepping into the pool of the bankruptcy case, we would become a party. That's what our motion for relief from stay was all about, was being able to get relief from a plan that bound us, whether we were notified or not. The plan doesn't bind you if you are not a party. The plan binds the parties. This is really fundamental. Well, Judge Eastbrook, Wheeler's concern is that under Section 1141, the effect of confirmation would bind Wheeler as a creditor. No, people can put in their legal papers anything they want. But if they don't make the adverse entities parties to the case, judgment doesn't affect them. There's scarcely a more basic rule of law than that. And I don't disagree, and I don't try to contest that. But the point I'm trying to make is we have to go to the bankruptcy court to get permission in order to go to the state court. Otherwise, we're risking a stay violation. We're risking contempt. Once the plan is confirmed, the stay is lifted. This is a pointless argument. Mr. Roberts, along that line, did Judge Packhold have to reach the issue of the tax deed order, put to the side the plan modification orders and the other orders? Did she have to get to that analysis and evaluation of the tax deed order? I think she did. Why? Because if Wheeler is successful in getting the other orders reversed, it would still have the tax deed order that was compelling it to correct the tax deed and surrender back the tax deed. So I think it was just a final piece that needed to be taken care of. But you did all the things that the order required. You undid the tax deed. And so I had a similar question to Judge Brennan's. Unless you're out there saying that you're going to go back to the Cook County Courts the minute this is over and try to get it reinstated, which seems to me not in the spirit of what Judge Packhold was saying, I'm not sure what's left of that part of the case. And as I said, Judge Wood, it was in order to clear the way in the event that we are successful on the other orders. I see my time is coming up. And unless the Court has any other questions, I'd like to reserve the rest for a bottle. Certainly, Mr. Roberts. Mr. Raven, I'm sure you can tell where we're going to start. I do. Right? The bank drafts a plan that specifies Wheeler's rights without ever making Wheeler a party. What's going on here? Let me state that the bank didn't draft the plan. The debtors drafted the plan. The bank assisted in ensuring that its lien was preserved in the plan as the Class C creditor. And it was certainly aware of how the Class II creditors were being handled. But Chase did not draft the plan. And you don't think you had any obligation to notify the bankruptcy court that Wheeler was not a party? I do not believe so, no, sir. You may expect some comment about that subject when this court issues an opinion. Yes, Judge. I just want to make sure I understand. You are standing on your feet and assuring the Seventh Circuit that in the view of J.P. Morgan Chase, you have no obligation whatsoever even to tell the bankruptcy court that a party, that an entity whose rights are prescribed by the plan, is not a party. We told you. It's a matter of indifference. No, I'm not saying that. I'm by no way saying that, Judge. What I'm saying is the facts on the ground. In the bankruptcy court, a confirmation was that the debtor's counsel made a statement indicating exactly what his communications were with the party. Are you saying with Wheeler? Yes. Okay. Let's use now. And just to digress, I agree there is Seventh Circuit appellate jurisdiction. You're going to need to raise your voice. You're mumbling. Certainly. There is absolutely Seventh Circuit jurisdiction. I didn't want to be yelling to you all. It's a big world. You need to speak up. There's absolutely Seventh Circuit appellate jurisdiction. Wheeler is absolutely a party. And at what date do you think it became a party? Wheeler became a party when it interjected itself in the case through debtor's counsel when it participated in the plan. Pre-confirmation, you're saying? Or post-confirmation? I would argue certainly post-confirmation. And I would assert pre-confirmation when it effectively appeared through an agreed order, presented a confirmation through an agreed order presented by debtor's counsel, was effectively an agreed motion. Debtor's counsel. The ones who committed bankruptcy fraud by not disclosing these debts. That's who you want to rely on? Judge, I'm just relying on the facts on the ground. They presented an agreed motion where he told the bankruptcy court that he had reached an agreement with debtor regarding their treatment in the plan. It was an agreed treatment in the plan. They were aware of that, Judge Easterbrook. I understand your concern. Was there a person from Wheeler in the courtroom that day? They were not, Judge. I didn't think so. And, in fact, they didn't need to be because they had reached the agreement. Because a phone call is enough? No, it was part of it. Instead of all this stuff about notice and service of process and return and acknowledgement, phone calls? No, sir. No, sir, Judge. It was far more than that. It's their own admissions concerning what their participation was. They talked about in their briefs, I'll read some of the quotes directly from their briefs, about how they had reached a negotiated agreement. Quote, from their brief in the first appeal, quote, Wheeler negotiated a six-month deadline from plan confirmation by which debtors were to pay the Wheeler claim in its entirety. And in its brief, on page 40, Wheeler concedes that this negotiated agreement was reached right before the planned voting deadline, as Mr. Roberts conceded. So, again, I hear the courts. So you're saying it was a voluntary appearance and thus no service was necessary? They just showed up? Yes, I am saying that they participated in an agreed motion through an agreed order presented by debtors' counsel, where he told the court effectively, I received a call right before voting confirmation. And this is the agreement we reached. And there was some discussion by the bankruptcy court about how he doesn't consider the modification to be particularly material, and that the confirmation, and that he would confirm based on that participation. If I could just quickly segue real back quickly to Judge Easterbrook's question about Seventh Circuit jurisdiction. It was absolutely jurisdiction. Wheeler is absolutely a party. The Penron court said, quote, at page 462, a creditor, quote, may participate in the bankruptcy in order to try to get the automatic stay lifted. And I think what perhaps Judge Easterbrook is suggesting is that rather than interjecting itself into the case or saying, I don't know why you're calling me because this has nothing to do with me, I'm not a party, that it should have done exactly what happened in the underlying case in Penron. In the underlying case in Penron, they went to state court, and it had to do, it was effectively, and I don't remember it exactly, but some sort of, it was a contempt hearing for proceeding in state court on the grounds that they had not participated in the case. That's not exactly the factual scenario in Penron, as I recited, and obviously the facts speak for themselves of what happened in Penron. But I think what Judge Easterbrook is saying, that by interjecting itself into the case, it made itself a party. And what I'm stating is that what it could have done, consistent with Penron, what I'm saying is consistent with what it could have done. It could have simply just ignored it, gone to state court, and said, why are you calling me? They said the plan doesn't, I didn't participate in the plan, which by that point it had. The court asked about, Judge Easterbrook asked about, let me just quickly address Judge Drenn's question, concerning the concern of whether Judge Colt's order relating to the tax deed mattered. This is your cross appeal. That's exactly right. And sort of the concern was, and sort of it's out of an abundance of caution, that there could be an affirmance from the Seventh Circuit, and that Wheeler would maintain that the tax deed snaps right back, and that they can go get a tax deed, despite the fact that, as Judge McCold ruled, it has no lien interest. So that's the basis for our cross appeal. We don't believe, I believe, as was being perhaps suggested, that once the tax deed was voluntarily vacated, I think the language that Wheeler used was it dutifully complied with that order, that there was anything left. It just didn't matter at that point. There was no relief that could have been sought with respect to the tax deed. We're not saying that if stay relief is ultimately granted, that they can't go back at a later date. But what we are absolutely saying is that- Didn't the state court somehow indicate that this was still open? Absolutely. Absolutely, Judge. And I think that sort of illustrates, to some extent, why it just was moot. Once the tax deed was vacated, there was nothing for Judge McCold to do. With respect to the indisputable value, I believe it was the words, if I wrote them down correctly, by Judge Easterbrook, if I could articulate what I believe to be Wheeler's best interest accreditors test. Mr. Roberts, I think, was asked the question. He couldn't quite pose it, and it had to do with were they getting more? What were they getting each time? The argument that appears to have been made by Wheeler is something along the lines of, yeah, they're only owed $40,000, and the property is worth a million. But there's no way we can stop this tax deed. Nobody can stop this tax deed. Yeah, we get our $40,000, but the bankruptcy trustee is going to just abandon the property or concede to relief from stay, and Wheeler can go back. No. Okay, Wheeler is entitled to the amount of its claim as of the filing plus interest. It's exactly what it got pre-confirmation, excuse me, in the original plan, and it's exactly what it got when the plan was modified. There was no material change to the amount of its claim, only to the plan deadline. Okay. I was promised that I was going to be getting questions concerning the bank's contacts, and I'm happy to address them now or I'm happy to proceed on with my argument, whatever is the Court's pleasure. You should proceed, Counselor. Certainly. This would be a completely different case on remand. This would be a completely different case if the bankruptcy court on remand denied plan of modification, but it didn't grant the plan of modification on remand from Judge Norville. It found that the proposed modification was feasible. It found that it was equitable. Now I'm lost. Judge Packold was clear that she was not remanding anything. I'm sorry. I meant to state Judge Norville. My apologies. On remand from Judge Norville on the first time through, when it went back to Judge Barnes on the plan modification, he found it to be feasible, equitable, and complied with the requirements. The feasibility was eminent. It was easy. We were standing there with a check in January 2016 ready to pay him, and, in fact, we tendered full payment as everybody has acknowledged. It was equitable. Under the Witkowski, plan modification is subject to the discretion and the court exercises discretion. Wheeler makes it sound like Chase is maintaining that every modification must be allowed no matter what. We're not suggesting that in any sense. This is the first time through. This isn't the tenth time through. This isn't saying, hey, just give us another four years to sell the property and get you paid. This is we'll get you paid in seven days because we've got the money, and, in fact, that's exactly what happened. The modification was equitable because it furthered the ends of justice by facilitating a continuation of the Chapter 11 plan, and sort of importantly, as it ties into the Fernstrom factors, it doesn't harm Wheeler. How is Wheeler harmed? It continues to get full interest, 12% penalty interest. It got exactly what it bargained for in the plan. I know it wants a tax deed, but that's not what the plan provided for, and that's not, quite frankly, what the law provided. Its position, of course, being that it had no say in the creation of the plan, and therefore the plan said what it said, but they say sort of don't put it on us. That is what it's saying, but that's not what its own brief says. Its own brief talks about it got exactly what it wanted. It negotiated for this payment deadline. In exchange for the payment deadline, it consented to the plan. It effectively voted for the plan, Judge. So it got exactly what it wanted in the plan. It was after the fact that it didn't like what it got. Not only that, it was secured. It was secured by the proceeds from the sale of the Lyle property, the second DuPage County property. Which property? Is that the commercial property? It is, yes. I believe it's actually, I know it's been referred to as that. I believe it's a six flat. I don't believe it's a commercial property, but it is not the DuPage residence. It is the other property. But that's the one that didn't sell. That's correct. There's three properties involved. There's the restaurant and there's the Cook County restaurant, and then there's two DuPage. That's correct, Judge. It's the one that didn't sell. It's the residence that has nothing to do with this. It's this other property that was supposed to be sold. It was listed for sale, and the class two claim contemplated that Wheeler would be paid from this sale of this property. That's what they got. They effectively became secured in the plan. They got security. They substituted their existing, their lien in the restaurant for a lien in this, what was referred to, I don't want to refer to it as a commercial property, but the second DuPage County property. Let's talk about the procedural posture. In Mr. Roberts' argument, he talks how he wants to sort of snap back this first, the first judgment entered by Judge Barnes on the first time through, back to the 2016 judgment. And he asked his court to reverse that order and effectively undo it. That argument was not raised in the second appeal. In the second appeal, sections one and two of its brief asked to deal with the state relief order. Section three deals with plan modification. But I think what they're saying is that since the later courts all made it very clear from Judge Norgal onward that they were dealing with law of the case, that, you know, when you finally do have a final judgment and you can come to the Court of Appeals, you can reach back and look at legal rulings that were material to the outcome. They may be saying that, but what they really want this court to do is snap us right back to January of 2015. Yeah, no, I know that. But I'm saying that's how they get there because if you look at Judge Packold's opinion, if you look at Judge Barnes' second opinion, if you look at Judge Norgal's opinion, you can see after Judge Norgal spoke, bankruptcy Judge Barnes says, I have my marching orders, you know, this is what I'm supposed to do. It's a hierarchical system, and he does what he believes he's supposed to do, and then it goes up to Judge Packold, and she herself says, you know, it's a predecessor district judge. I'm not going to unwind it. That's correct, Judge. Yeah. So what's wrong with looking back to the original outcome of the bankruptcy, you know, the original decisions of the bankruptcy judge, Judge Barnes? I mean, if or at least Judge Norgal's notion that the lien folds into the confirmed plan, if and only if, of course, we're dealing with parties to the case, gets back to the basic point Judge Easterbrook has been making. But if somehow or another Wheeler agreed, you know, just sort of showed up voluntarily, all this reminds me of Pennoyer v. Neff, to be honest, but it's, you know, you can show up voluntarily. You can become a party other than by service of process if you agree. I'm going to, without regard to Pennoyer v. Neff, I'm going to just disagree that we can unwind the clock and pretend that Judge Norgal's opinion remanding the case back did not occur. It simply is not. I don't agree with that. The facts change. They had Henry Holland talks about how effectively how you go back to the bankruptcy court, it comes back to the district court, and then it ultimately makes its way back here. They could have sought an interlocutory appeal to this court to where we effectively, where we would have been reviewing Judge Barnes's, we would have been reviewing Judge Norgal's decision, reviewing Judge Barnes's decision. But I respectfully submit that the ship of going back to sort of this snapback and considering what Judge Norgal did in the first instance, certainly I don't accept that proposition. Okay. Unless anyone has any other questions, I do want to reserve time if necessary for matters relating to the cross appeal or anything else that the court has for me. That's fine with me. Thank you very much for your consideration, Judge. Mr. Roberts, anything further? Yes, Judge. Just a couple of points on rebuttal. The first being in terms of the application of Penrod in participation, which was raised by Chase's attorney, the Penrod rule has never been applied at the circuit court level to a secured creditor who did not file a proof of claim. If the court would do it in this case, it would be the first time. None of the circuit courts have ever applied it to a creditor who didn't file a proof of claim. Also, just to rebut Chase on a point, that Wheeler never participated in the case prior to the final confirmation order. What we're talking about is a single phone call that was made to Tedra's counsel. There was no appearance in court. It's hard to appear and be heard if you don't actually step foot in court, and Wheeler did not. Another point I want to make is that Chase's counsel is incorrect that Wheeler got the benefit of its bargain. It didn't. The only thing that Wheeler was able to get in terms of a concession on the plan through that last-minute phone call was a hard payment deadline, and no one disputes that the payment was not made by that hard payment deadline. So Wheeler didn't get what it was supposed to get, and by the time that payment deadline was missed, and the redemption deadline under state law was also gone. But by that time, Wheeler had, in fact, filed an appearance by the time that payment deadline. No, Judge Wood, it had not. It had not. It did not file its first appearance until like a month and a half after, when it came in on the motion for relief from stay, raising the issue that the payment deadline had not been complied with. So it's trying to take advantage of the plan without being a party to the plan? I'm sorry, I didn't hear you. It's trying to take advantage of the confirmed plan without being a party to the confirmed plan? No, Judge. If the deadline, if you're not involved, then what does the deadline mean? Well, they weren't trying to get the benefit of the plan. They came in on a motion for relief from stay saying we're no longer bound by the plan because the payment deadline came and went, and the redemption deadline has come and gone, and therefore we should be permitted into state court. The last point I'll make is that Chase conflates the best interest of creditors test with crammed down requirements under 1129B. Our argument about best interest of creditors is just, frankly, we would have been better off in a Chapter 7 liquidation. And so in order to modify a plan, as the debtor is attempting to do, there needs to be compliance with that basic guarantee of any dissenting creditor, that you're at least going to get what you get in a Chapter 7 liquidation. And in a Chapter 7 liquidation, we would be able to get the tax deed. There was no equity in this property whatsoever. Unless the court has any other questions, I'll conclude. Thank you very much, counsel. The case is taken under advisement.